United States District Court
Southern District of Texas
**ENTERED**
February 04, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IVAN ANDRES B.G., | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:25-cv-00971 |
| | § | |
| FRANK BISIGNANO, | § | |
| COMMISSIONER OF | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| *Defendant*. | § | |

## **MEMORANDUM AND RECOMMENDATION**

Before the Court is Plaintiff's Motion for Summary Judgment (ECF 13) and Defendant's Cross Motion for Summary Judgment.[1] ECF 17. After considering the parties' arguments, the record, and the applicable law, the Court RECCOMENDS Plaintiff's Motion be GRANTED, Defendant's Motion be DENIED, and the case be REMANDED for further administrative proceedings.

### I.    Factual and Procedural Background.

On September 25, 2019, Plaintiff Ivan Andres B.G. filed a Title II application for disability insurance benefits. Tr. 17. The application identified a disability onset date of March 28, 2013. *Id.* Plaintiff's claim was denied on March 4, 2020, and again upon reconsideration on April 25, 2023. *Id.* On March 27, 2024, the

---

[1] The District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. ECF 3.

Administrative Law Judge ("ALJ") held a hearing at which Plaintiff was represented by counsel. *Id.* On May 31, 2024, the ALJ issued a written decision finding Plaintiff not disabled. Tr. 17-32. The Appeals Council denied Plaintiff's request for review on October 25, 2024. Tr. 1–6. Plaintiff sought judicial review in this Court.

On June 30, 2025, Plaintiff filed a Motion for Summary Judgment. ECF 13, 14. On August 29, 2025, Defendant filed a Cross-Motion for Summary Judgment (ECF 17), to which Plaintiff replied (ECF 18). The motions are ripe for consideration.

### A. Plaintiff's Testimony.

The ALJ summarized Plaintiff's testimony from the March 27, 2024, hearing as follows: "[T]he claimant testified that he has not been able to return to work. His back is healed, but his mind is not well due to pain. His worse [sic] health conditions are the stroke he had, high blood pressure, and osteoarthritis. The claimant stated that he does not recall when the stroke happened. All his issues started after his accident in 2013. Due to the stroke, sometimes he does not know where he is. It has affected his whole right side, and he cannot see or hear well. Sometimes he has to write with his left hand. He is going to have surgery to see if they can fix his right side. He has surgery scheduled to put tendons from someone else into his right hand. He has to strengthen his body before they can perform the surgery. If done now, he could die during the surgery. Additionally, the claimant testified that, on average, he

2

has to receive medical care six to seven times per month. He wears a right knee brace. He also has a back brace. The right knee brace is for protection and to help him move it. Without the brace, it increases his convulsions because his body starts stressing more. The claimant stated that he can stand for five minutes before needing to take a break. He has difficulty sitting in a chair. Sometimes he can lift a pound or less. He cannot type or use a computer keyboard, and he has a hard time using his left hand. Further, the claimant testified that he has issues with back/spine. They said they could operate on him, but they should not do it because it could be more harmful. All the discs in his spine are damaged. Due to osteoporosis, he will probably be using a wheelchair soon, and he probably will have to be lying down. As time goes on, his bones become more fragile like a piece of glass, and he will have issues standing." Tr. 22-23. "The claimant testified that, regarding his memory, he has a lot of déjà vu. Sometimes he forgets what he was speaking about. He even forgets how to tie his shoelaces. His parents and other people help him take his medication, and he uses a pill box. The claimant stated that he lives with his parents. His parents help him with preparing his medication, eating, laundry, and going to the doctor. He also has a service dog." Tr. 26.

### B. Medical Evidence.

The medical records span 2013-2024 and include multiple medical opinions which vary in depth of discussion.  There are opinions from state agency medical

3

and psychological consultants Drs. Norvin Curtis (Ph.D.) and Scott Spoor (M.D.) (Tr. 116-129, 130-144, 147-156), as well as from psychological consultative examiner Dr. Cecilia Lonnecker (Ph.D.). Tr. 2322-2328. There are additional medical opinions from Dr. James Butler III (M.D.) (Tr. 1438-1446), Sirley Pareja (OTR) (Tr. 1496-1502, 2807-2817), Dr. Alicia Goldman (M.D.) (Tr. 2773-2774), Dr. Ramil Cadungog (M.D.) (Tr. 2776-2777), and Dr. Krishna Sajja (M.D.) (Tr. 1684).

## II.    Standard of Review for the Commissioner's Decision.

Section 405(g) of the Act governs the standard of review in social security disability cases. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).

With respect to all decisions other than conclusions of law,[2] "[i]f the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

---

[2] Conclusions of law are reviewed *de novo*. *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

"Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence has also been defined as "more than a mere scintilla and less than a preponderance." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). The standard of review for social security disability claims is exceedingly deferential. *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). A court will not re-weigh the evidence, and in the event of evidentiary conflict or uncertainty, will not substitute its judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (internal quotation marks and citation omitted). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id.*

When determining whether a claimant is disabled, the ALJ must follow a five-step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing 42 U.S.C. §

423(d)(1)(A)).  A finding at any point in the five-step sequence that the claimant is disabled, or is not disabled, ends the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

The claimant bears the burden to prove disability at steps one through four, meaning the claimant must prove he is not currently working and is no longer capable of performing his past relevant work.  *Newton*, 209 F.3d at 453.  If the claimant meets his burden, the burden shifts to the Commissioner at Step Five to show that the "claimant is capable of engaging in some type of alternative work that exists in the national economy." *Id*.  Thus, for the Commissioner to find in Step Five that the claimant is not disabled, the record must contain evidence demonstrating that other work exists in significant numbers in the national economy, and that the claimant can do that work given his RFC, age, education, and work experience. *Fraga v. Brown*, 810 F.2d 1296, 1304 (5th Cir. 1998).

### III.   Analysis.

The ALJ performed the standard five-step sequential analysis and concluded that Plaintiff was not disabled within the meaning of the Social Security Act from his alleged onset date (March 28, 2013) through his date last insured (December 31, 2018).  Tr. 18-19.  The Court reviews each step of the ALJ's analysis below.

### A. Step One.

At Step One, the ALJ decides whether the claimant is currently working or "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1571. If so, the claimant is not disabled. Here, the ALJ found that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of March 28, 2013, through his date last insured of December 31, 2018." Tr. 19. Plaintiff does not allege error at Step One.

### B. Step Two.

At Step Two, the ALJ determines whether the claimant has a severe impairment. "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (internal quotations omitted). "If [a claimant does] not have any impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities," the Social Security Regulations require a finding that the claimant does "not have a severe impairment and [is], therefore, not disabled." 20 C.F.R. § 404.1520c.

Here, the ALJ found Plaintiff has the following severe impairments: "status post fractured right foot, seizure disorder, status post right wrist fracture, anxiety

disorder, major depressive disorder (MDD), and cognitive disorder."   Tr. 19. Plaintiff does not allege error at Step Two.

### C. Step Three.

Step Three requires the ALJ to determine whether the claimant's severe impairments meet or medically equal one of the listings in the regulations known as Appendix 1.  20 C.F.R. §§ 404.1520(aa)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, app. 1.  "For a claimant to show that her impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).  For a claimant to show that an impairment "medically equals" a listed impairment the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment."  *Id.* (emphasis in original).

In this case, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in Appendix 1. Tr. 20-21. The ALJ considered listing 1.18 regarding Plaintiff's foot and wrist issues but found no evidence of a medically necessary walker or other assistive device that rendered Plaintiff unable to use at least one upper extremity. Tr. 20. With regard to Plaintiff's mental impairments, the ALJ considered the listings 12.02, 12.04, and 12.06.  Tr. 20.  The ALJ found no evidence

that Plaintiff had either one extreme[3] mental limitation or two marked mental limitations, and therefore he did not meet the Paragraph B requirements for the listings. *Id.  See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.02, 12.04, 12.06.  The ALJ noted that Plaintiff had a moderate limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing himself. Tr. 21.

The ALJ then considered the Paragraph C requirements for listings 12.02, 12.04, and 12.06 but found Plaintiff did not meet them.  Specifically, the ALJ noted there was no evidence of both "(1) medical treatment, mental therapy, psychosocial supports, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of [Plaintiff's] mental disorder" and "(2) marginal adjustment, that is, a minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life." Tr. 21 (referencing language from 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.02(c), 12.04(c), 12.06(c)). Plaintiff does not allege error at Step Three.

---

[3] A five-point scale is used to evaluate mental limitations: none, mild, moderate, marked, and extreme.  20 C.F.R. § 404.1520a(c)(4). An extreme limitation "represents a degree of limitation that is incompatible with the ability to do any gainful employment." *Id.*  A marked limitation is a seriously limited ability to function independently, appropriately, or effectively and on a sustained basis. Tr. 20.

**D. Step Four.**

Prior to Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC") to decide whether the claimant can still perform past relevant work. "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433 F. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545). The ALJ must base the RFC determination on the record as a whole and must consider all of claimant's impairments, including those that are not severe. *Id.*; 20 C.F.R. §§ 404.1520(e) and 404.1545. The ALJ is solely responsible for determining the claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

The ALJ found that through the date last insured, Plaintiff had the RFC to perform light work[4]

> except he could never climb ladders, ropes, or scaffolds. He could occasionally climb ramps and stairs; and occasionally balance, stoop, kneel, crouch and crawl. He could frequently handle and finger with the right upper extremity, and he was right-handed. He was able to understand, carry out, and remember simple routine and repetitive tasks involving only simple work-related decisions. He could work with no fast paced or quota dependent type work. He could never be exposed to

---

[4] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

workplace hazards such as unprotected moving mechanical parts, unprotected heights, or commercial driving.

Tr. 21-22.

Plaintiff raises three errors with the RFC finding.  First, Plaintiff argues that the ALJ erred in rejecting all medical opinions discussing Plaintiff's mental impairment and basing the RFC on his own lay opinion.  ECF 14 at 8-9.  Second, Plaintiff argues the RFC for light work is not supported by substantial evidence because the ALJ failed to discuss medical evidence that contradicts the RFC and failed to address Plaintiff's off-task limitations. *Id.* Third, Plaintiff claims that the ALJ performed a subjective symptom analysis that was improperly based on selective consideration of evidence. *Id.*

### 1. The ALJ committed legal error in formulating the mental portion of the RFC, which also lacks substantial evidentiary support.

Under the revised rules for evaluating medical opinions, the ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior medical findings in [his] determination or decision." 20 C.F.R. § 404.1520c(b)(2). "Supportability" focuses on how well the medical evidence and supporting explanations given by the medical provider support the provider's opinion. *Kilby v. Kijakazi*, No. 4:20-CV-03035, 2022 WL 1797043, at *3 (S.D. Tex. Mar. 15, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency," on the other hand, is "an all-encompassing inquiry focused on how well a medical

source is supported, or not supported, by the entire record." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)). The ALJ must articulate "a discernible logic bridge between the evidence and the ALJ's persuasiveness finding." *Puckett v. Kijakazi*, No. 4:22-CV-4542, 2024 WL 1260268, at *4 (S.D. Tex. Feb. 9, 2024), *report and recommendation adopted*, No. 4:22-CV-04542, 2024 WL 1259278 (S.D. Tex. Mar. 25, 2024). *See Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010) ("The ALJ does not need to comment on every piece of evidence, but only must build an accurate and logical bridge between the evidence and the final determination.") Additionally, the ALJ need not use the words "supportability" and "consistency" in order to comply with applicable standards. *See Keel*, 986 F.3d at 556 (stating in discussion severity standard "[a] case will not be remanded simply because the ALJ did not use 'magic words.'").

Plaintiff argues the ALJ failed to perform the required persuasiveness analysis when rejecting the medical opinions regarding Plaintiff's mental impairments. ECF 14 at 12-15. The ALJ noted the state agency psychological consultant's initial review found Plaintiff "was unable to perform sustained competitive work without interruption," and on reconsideration the consultant found "there was insufficient evidence to complete a medical assessment." Tr. 28. The ALJ found both sets of opinions "unpersuasive because they are inconsistent with, and unsupported by, the medical evidence overall, which supports a finding that the claimant has work-

related limitations due to his mental impairments . . . [and t]hey are also inconsistent with each other." *Id.*  Similarly, the ALJ dismissed as unpersuasive the report by psychological consultative examiner Dr. Lonnecker, which concluded that Plaintiff "was not a candidate for the competitive work force," because it was completed two years after Plaintiff's date last insured. Tr. 28-29.

The Court concludes the ALJ failed to sufficiently explain how she considered the supportability and consistency factors when determining the state consultant's initial review and reconsideration opinions were unpersuasive.  The ALJ's decision does not provide details as to which parts of the medical record contradict the state consultant's initial review or reconsideration.  *See Williamson v. Comm'r of Soc. Sec.*, No. 1:21-CV-452 (MAC), 2023 WL 6119888, at *5 (E.D. Tex. Aug. 30, 2023) (finding that ALJ committed legal error by making "vague reference to . . . treatment notes" instead of providing specific conflicting evidence on which he relied as required by § 404.1520c's specificity requirements), *report and recommendation adopted sub nom. Williamson v. Comm'r of Soc. Sec. Admin.*, No. 1:21-CV-452, 2023 WL 6119369 (E.D. Tex. Sept. 15, 2023).  Merely stating the opinions are inconsistent with the record, or with each other (particularly when the findings differ due to a lack of evidence), fails to provide a logical bridge between the opinion and its persuasiveness.  Beyond the conclusory nature of the discussion, the ALJ conflated the consistency and the supportability analyses, improperly concluding

13

that the opinions were not persuasive because they were "not supported by . . . the medical evidence overall." Tr. 28. *See Kilby v. Kijakazi*, No. 4:20-CV-03035, 2022 WL 1797043, at *3 (S.D. Tex. Mar. 15, 2022) (finding ALJ committed legal error in claiming medical opinion was unsupported due to being inconsistent with the medical record overall because supportability analyzes whether an opinion is supported by the objective medical evidence upon which the provider bases his or her opinion); *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 500 (S.D. Miss. 2021) (remanding because "the Court cannot discern how the ALJ considered . . . 'supportability'").

Similarly, the Court concludes the ALJ failed to conduct the proper analysis when finding Dr. Lonnecker's opinion unpersuasive. The ALJ simply stated the opinion was unpersuasive because it was completed after the date last insured. Tr. 29. While the date of the report may make it unpersuasive, the failure to provide any basis for the persuasiveness finding deprives the Court of meaningful judicial review. *See Quiroga v. Kijakazi*, No. 7:22-CV-00188, 2023 WL 6050776, at *12 (S.D. Tex. Aug. 2, 2023) ("The measuring stick for an adequate discussion of supportability and consistency is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of whether his finding regarding the particular medical opinion was supported by substantial evidence and does not require the Court to merely speculate about the reasons behind the ALJ's

14

persuasiveness finding or lack thereof." [internal quotation marks and brackets omitted), *report and recommendation adopted,* No. 7:22-CV-00188, 2023 WL 6049520 (S.D. Tex. Sept. 15, 2023).  For instance, the date notwithstanding, the opinion could have been based on prior objective medical evidence and consistent with the record, such that it would have been persuasive regardless of the date.

### 2. The RFC is not supported by substantial evidence with respect to Claimant's mental impairment.

Where a hearing before an ALJ occurs, the ALJ is responsible for determining the RFC. 20 C.F.R. § 404.1546(c).  An RFC must be supported by substantial evidence.  Where the record lacks a medical opinion explaining the impact of Claimant's impairments, the RFC cannot be supported by substantial evidence. *Ripley v. Chater*, 67 F.3d 552, 557–58, 558 n. 2 (5th Cir. 1995) ("Without reports from qualified medical experts, however, we cannot agree that the evidence substantially supports the conclusion that Ripley was not disabled because we are unable to determine the effects of Ripley's conditions").  The ALJ may assess the medical opinions in light of the evidence but may not "impermissibly [rely] on [his or her] own medical opinions as to the limitations presented by" a claimant's medical conditions. *Williams v. Astrue*, 355 F. App'x 828, 831–32 (5th Cir. 2009).  While the ALJ is not required to rubberstamp a medical opinion, and may "reasonably [depart] from the exact strictures of a particular medical opinion" or only utilize an opinion's persuasive aspects (*Cooley*, 587 F. Supp. 3d at 497–98), an ALJ commits reversible

15

error when he or she "rejects the only medical opinions of record [and] . . . interprets the raw medical data" to arrive at the RFC. *Garcia v. Berryhill*, No. EP-17-CV-00263-ATB, 2018 WL 1513688, at *2 (W.D. Tex. Mar. 27, 2018). *See Sprowl v. Comm'r of Soc. Sec.*, 794 F. Supp. 3d 477, 486 (W.D. Tex. 2025) (same, collecting cases).

As described above, the ALJ found the only medical opinions discussing Plaintiff's mental impairments, from the state agency psychological consultant Dr. Curtis and psychological consultative examiner Dr. Lonnecker unpersuasive. Tr. 28. The ALJ reviewed treatment notes from Plaintiff's therapy sessions from July 2015 to November 2018 (Tr. 26-27, 1959-2286), and determined Plaintiff's RFC was limited to "simple routine and repetitive tasks involving only simple work-related decisions," noting he "could work with no fast paced or quota dependent type work." Tr. 22.  The ALJ explained that these limitations were based on "claimant's allegation that he was unable to follow instructions . . . [and] needed reminders," although the ALJ noted that the treatment records showed his cognition was intact. Tr. 27-28.  The ALJ further explained that the limitation to no fast-paced work was based on Plaintiff's "allegation that he did not finish what he started," with the ALJ adding that the "treatment records [showed] . . . thought processing was linear . . . [and] he had normal attention and concentration." Tr. 28.

16

The RFC is not supported by substantial evidence because the ALJ rejected all relevant mental impairment opinions and formulated the RFC based on her lay opinion. The ALJ relied on her own analysis of the treatment record, specifically the session notes from Plaintiff's therapist that do not address work limitations, and Plaintiff's own testimony. *See Thornhill v. Colvin*, No. 3:14-CV-335-M, 2015 WL 232844, at *10 (N.D. Tex. Jan. 16, 2015) (finding an RFC not substantially supported where ALJ rejected all relevant medical opinions discussing the impairments impact on ability to work and instead "relied on progress notes that do not themselves address Plaintiff's work limitations"); *Fitzpatrick v. Colvin*, No. 3:15-CV-3202-D, 2016 WL 1258477, at *8 (N.D. Tex. Mar. 31, 2016) (finding RFC not substantially supported because ALJ rejected relevant medical opinions yet improperly included mental impairment related aspects in RFC); *Ripley*, 67 F.3d at 557–58 (finding an RFC based on plaintiff's testimony, without medical opinions, was not substantially supported). The Fifth Circuit has repeatedly instructed ALJs not to substitute their lay opinion in place of a medical opinion. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (warning ALJs "against 'playing doctor' and making their own independent medical assessments" because "common sense about medical matters is often wrong"). This warning is especially important in cases involving mental impairments. *See Salmond v. Berryhill*, 892 F.3d 812, 818 (5th Cir. 2018) ("The principle that an ALJ should not substitute his lay opinion for

17

the medical opinion of experts is especially profound in a case involving a mental disability" [internal quotation marks, brackets, and citation omitted]). Therefore, the RFC is not supported by substantial evidence.

### 3.  The errors were not harmless, so remand is necessary.

Remand is not required when the ALJ's error was harmless, meaning that "it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021).  *See Jones v. Astrue*, 691 F.3d 730, 734 (5th Cir. 2012) (explaining plaintiff must show the error was prejudicial).  Here, the failure to conduct the proper persuasiveness analysis was not harmless, because it is conceivable that after the proper analysis of the medical opinions, the ALJ may have found additional limitations or agreed with the two medical opinions that found Plaintiff was not a candidate for competitive work because of his psychological symptoms.  Tr. 128, 2327. *See Mojica v. King*, 764 F. Supp. 3d 541, 548–49 (W.D. Tex. 2025) (noting improper persuasiveness analysis was harmful error because ALJ could have concluded that the mental impairments described in the medical opinion could have warranted additional limitations).

Because the Court finds legal error that was not harmless and requires remand, it need not address additional arguments.

### E. Step Five.

At Step Five, the ALJ determines whether the claimant can perform other work that exists in the national economy. 20 C.F. R. § 404.1520(a)(4)(v); *Fraga*, 810 F.2d at 1304. When posing hypothetical questions to a vocational expert to determine whether the claimant can perform work in the national economy, the ALJ must reasonably incorporate all the limitations recognized by the RFC, and the claimant or her representative must be afforded the opportunity to correct any deficiencies in the question. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Masterson*, 309 F.3d at 273.

Plaintiff was 34 years old as of the date last insured, and he possessed at least a high school education.[5] Tr. 30. The ALJ noted that Plaintiff had past relevant work experience as a construction worker. *Id.* The ALJ found that Plaintiff was not able to perform his past work when considering his RFC and the physical and mental demands of his past work. *Id.* The ALJ found that through the date last insured, considering Plaintiff's age, education, work experience, and residual functional capacity, he was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. Tr. 31. The VE testified

---

[5] Plaintiff claims this is an error and that he has only attempted to complete his GED. ECF 14 at 2 n. 2. Plaintiff does not argue this was harmful error.

19

that Plaintiff could perform work as a housekeeping cleaner, garment sorter, or garment bagger. *Id*.

Plaintiff does not directly challenge the ALJ's Step 5 analysis, but due to the legal error committed while formulating the RFC, it cannot be used in conjunction with the vocational evidence to make proper determination at Step 5.

## IV.    Conclusion and Recommendation.

For the reasons stated above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF 15) be GRANTED, Defendant's Cross-Motion for Summary Judgment (ECF 17) be DENIED, and the Commissioner's Decision be REMANDED for further administrative proceedings.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(C).  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on February 04, 2026, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge

20